IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| JASON DON SELLS<br>TDCJ #0232552, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:20-CV-0020-Z-BR |
| | § | |
| MIGUEL FLOREZ, *et al.*, | § | |
| | § | |
| Defendants. | § | |

**FINDINGS, CONCLUSIONS AND RECOMMENDATION TO
GRANT DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Before the Court is a Motion for Summary Judgment (the "Motion") filed by Defendants Miguel Florez and Martin Birkenfeld. (ECF 54). For the reasons stated herein, the Magistrate Judge recommends that the Motion be GRANTED.

## I. BACKGROUND

On December 24, 2019, Plaintiff Jason Don Sells was a pretrial detainee in the Potter County Detention Center. In his Complaint, Sells alleges that he was standing in the cell with his arms down at his sides in a "non-combative/non-threatening stance" when Defendant Miguel Florez ("Florez") punched him in the face while holding jail keys in his closed fist. (ECF 3 at 2, 4). Sells claims that the punch knocked out his left front tooth and caused bruising and swelling to his eye, cheek and mouth. (*Id.*; ECF 60 at 4). Florez punched him, Sells states, because Sells "displayed … [his] middle finger as a silent gesture of [his] unfavorable opinion" of Florez's refusal to provide the address of this Court to Sells. (ECF 3 at 4). Sells further claims that, after punching him, Florez slammed him into a wall approximately 12-15 feet behind him, causing the back of his head to hit a metal phone box and causing a laceration to the back of his head. (*Id.*).

1

Sells alleges that Florez then strangled Sells until Sells was rendered unconscious. (*Id.*) Sells was taken to the medical unit for care. Subsequently, Defendant Martin Birkenfeld ("Birkenfeld") moved Sells to a solitary cell that Sells claims had fecal matter on the windows, walls, bed, door and food slot door. (*Id.*). Sells alleges that Birkenfeld moved him via force with use of his taser. His Complaint states that he was "forced … to live, eat and sleep in those atrociously gross inhuman conditions for the next 7 days." (*Id.*). His Complaint states that Birkenfeld knew that the cell was smeared with feces because the feces was in plain view, and Birkenfeld forced Sells to enter the cell even after Sells pointed out the feces. (*Id.*). Sells also claims that Birkenfeld failed to protect him from Florez's use of force. (*Id.* at 3).

Sells filed this lawsuit in January 2020, alleging various constitutional violations against Florez, Birkenfeld and other officers who later were dismissed from the case by Sells. Florez and Birkenfeld filed this Motion for Summary Judgment, claiming that they are entitled to qualified immunity. Sells responded to the Motion and disputes Defendants' claim.

## II. SUMMARY JUDGMENT STANDARD

### A.    Summary Judgment is Proper if No Genuine Dispute as to Any Material Fact.

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The Court must resolve all reasonable doubts in favor of the party opposing the motion. *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th

Cir. 1981).

The movant has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Anderson,* 477 U.S. at 247. If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure all of the essential elements of the claim or defense." *Fontenot v. Upjohn Co*., 780 F.2d 1190, 1194 (5th Cir. 1986). The nonmovant then must provide affirmative evidence to defeat summary judgment. *Anderson*, 477 U.S. at 257. No "mere denial of material facts nor...unsworn allegations [nor] arguments and assertions in briefs or legal memoranda" will suffice to carry this burden. *Moayedi v. Compaq Comput. Corp*., 98 F. App'x 335, 338 (5th Cir. 2004). The Court requires "significant probative evidence" from the nonmovant in order to dismiss a request for summary judgment supported appropriately by the movant. *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001). The Court must consider all evidence but must not make any credibility determinations or weigh the evidence. *Turner v. Baylor Richardson Med. Ctr*., 476 F.3d 337, 343 (5th Cir. 2007).

Because he proceeds *pro se*, Sells' pleadings are held to a less stringent standard than those drafted by attorneys. *See Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("A document filed *pro se* is to be liberally construed") (quotation omitted). Nevertheless, *pro se* parties must "still comply with the rules of procedure and make arguments capable of withstanding summary judgment." *Ogbodiegwu v. Wackenhut Corr. Corp*., 202 F.3d 265, 1999 WL 1131884, at *2 (5th Cir. Nov. 10, 1999); *Yazdchi v. Am. Honda Fin. Corp*., 217 F. App'x 299, 304 (5th Cir. 2007) ("The right of self-representation does not exempt a party from compliance with relevant rules of procedural and substantive law.") (citing *Hulsey v. Texas*, 929 F.2d 168, 171 (5th Cir. 1991)).

**B.      Defendants' Qualified Immunity Defense Alters the Burden of Proof.**

Florez and Birkenfeld move for summary judgment on their affirmative defense of qualified immunity. "The doctrine of qualified immunity protects government officials from civil damages liability when their actions could reasonably have been believed to be legal." *Argueta v. Jaradi*, 86 F.4th 1084, 1088 (5th Cir. 2023) (citing *Morgan v. Swanson*, 659 F.3d 359, 370 (5th Cir. 2011) (en banc)). Once an officer pleads qualified immunity, the plaintiff has the burden to establish that the officer violated the plaintiff's clearly established federal rights. *Argueta*, 86 F.4th at 1088 (citing *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005)). "This is a demanding standard." *Vincent v. City of Sulphur*, 805 F.3d 543, 547 (5th Cir. 2015), *cert. denied*, 136 S. Ct. 1517 (2016). Because qualified immunity "protects all but the plainly incompetent or those who knowingly violate the law, … we do not deny its protection unless existing precedent places the constitutional question beyond debate." *Argueta*, 86 F.4th at 1088 (internal citation omitted).

A qualified immunity defense alters the usual summary judgment burden of proof. *Brown v. Callahan*, 623, F.3d 249, 253 (5th Cir. 2010). "Once an official pleads the defense, the burden then shifts to the plaintiff, who must rebut the defense by establishing a genuine fact issue as to whether the official's allegedly wrongful conduct violated clearly established law." *Id*. To trigger the qualified-immunity framework, however, the government official must "satisfy his burden of establishing that the challenged conduct was within the scope of his discretionary authority." *Sweetin v. City of Texas City*, 48 F.4th 387, 392 (5th Cir. 2022) (quoting *Cherry Knoll, L.L. C. v. Jones*, 922 F.3d 309, 318 (5th Cir. 2019)). For example, in *Sweetin,* the Fifth Circuit held this "oft-overlooked threshold requirement" was dispositive "because state law does not give a permit

officer the authority to conduct stops of any kind." *Sweetin,* 48 F.4th at 392. In this case, however, Sells does not dispute that Defendants were acting within the scope of their duties.

To determine if an official acting within the scope of his or her duties is entitled to qualified immunity, courts conduct a two-step analysis. First, they examine whether the plaintiff has shown a violation of a constitutional right under current law. *Bevill v. Fletcher,* 26 F.4th 270, 275 (5th Cir. 2022) (quoting *Benfield v. Magee,* 945 F.3d 333, 337 (5th Cir. 2019)). Second, if a violation has occurred, courts determine whether the right in question was "clearly established" at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct. *Id.* In short, an officer is entitled to qualified immunity "if there is no violation, or if the conduct did not violate law clearly established at the time." *Bailey v. Iles,* No. 22-30509, 2023 WL 8062239 at *2 (5th Cir. Nov. 21, 2023). Courts have the discretion to decide "which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson v. Callahan,* 555 U.S. 223, 236 (2009). Each Defendant's conduct must be analyzed separately to determine if he is entitled to qualified immunity.

### III. CLAIM AGAINST DEFENDANT FLOREZ

Sells alleges in his Complaint that Florez used excessive force by punching him in the face, slamming him into a wall, and choking him into unconsciousness. (ECF 3). "[T]he Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Kingsley v. Hendrickson,* 576 U.S. 389, 397 (2015), (citing *Graham v. Connor,* 490 U.S. 386, 395, n.10 (1989)). To prove excessive force, a pretrial detainee must show: (1) that the defendant had "a purposeful, a knowing, or possibly a reckless state of mind" as to his "physical acts – *i.e.*, his state of mind with respect to the bringing about of certain physical consequences in the world," and (2) that the defendant's intentional actions were objectively unreasonable. *Id.* at 395-97. Put

another way, the plaintiff must allege that the defendant knowingly or purposefully used force, and that the force was objectively unreasonable. *Id.* at 396-97.

### A.    Florez's Conduct as Depicted by Video.

Sells alleges in his Complaint that he was standing in the cell with his arms down at his sides in a "non-combative/non-threatening stance" when Florez punched him in the face while holding jail keys in his closed fist. (ECF 3 at 2, 4). Sells further alleges that Florez slammed him into a wall and then strangled him until he was unconscious. (*Id.*). However, the video provided by Defendants in support of the Motion tells a somewhat different story. The video recording shows Sells looking out the cell window towards the guard area and displaying his middle finger. (ECF 56). Six other prisoners are visible in their bunks.[1] Sells removes his shirt and drops it to the ground while looking through the window as Florez approaches. He gestures to Florez through the window. He then stands with his arms at his sides, but clearly in a fighting stance as he moves nearer to the cell door and watches through the cell window as officers converge on the other side of the door. He steps out of his shower slides, and then pushes and kicks the door. He takes a small step back, but remains in his fighting stance, clenching and unclenching his fists, as the officers apparently prepare to enter. He takes another small step back, but does not otherwise significantly alter his pose. Florez enters the cell and initiates physical contact by placing his hand on Sells' chest. Florez does not appear to be holding keys in either hand. He then strikes Sells in the face, and begins to force Sells backwards, first with his hand on Sells' face and then with his forearm on or near Sells' throat.[2] Florez, followed by and aided by six other officers, pushes Sells into the

---

[1]Defendants state (and Sells does not dispute) that the cell was full at the time of the incident; however, the seventh inmate is never visible in the video. (ECF 55 at 93, ECF 56).
[2]Florez admits to striking Sells on the side of the face with a closed fist, but states that he was not holding keys at the time. (ECF 55 at 93).

wall with his forearm on Sells' throat. Sells hits at Florez and knocks his glasses off as the other officers converge on Sells. Sells then is brought to the ground and placed in restraints. The video provided to the Court skips between timestamp 1:07 and 1:08 and appears to be missing 53 seconds. It does not show Sells getting up from the floor and leaving the cell. However, at timestamp 1:09, he is seen through the cell window walking under his own power. At no time does the video show Sells being strangled into unconsciousness; in fact, it appears to show him resisting the officers' use of force until he is brought to the ground and restrained.

While the Court is to review the facts in the light most favorable to the non-moving party, "a plaintiff's version of the facts should not be accepted for purposes of qualified immunity when it is 'blatantly contradicted' and 'utterly discredited' by video recordings." *Hodge v. Engleman*, 90 F.4th 840, 845-46 (5th Cir. 2024) (quoting *Trammel v. Fruge*, 868 F.3d 332, 338 (5th Cir. 2017)). The U.S. Supreme Court has instructed that, when the video evidence is conclusive, the Court should "view[] the facts in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. 372, 381 (2007). As noted by the *Hodge* court, the Fifth Circuit has applied this standard many times. *Hodge*, 90 F.4th at 846. In *Craig v. Martin*, the court reversed a denial of qualified immunity, reasoning that, when "there is video evidence that 'blatantly contradict[s]' the plaintiffs' allegations, the court should not adopt the plaintiffs' version of the facts; instead, the court should view those facts 'in the light depicted by the videotape.'" *Craig v. Martin*, 49 F.4th 404, 409 (5th Cir. 2022) (quoting *Scott*, 550 U.S. at 380-81); *see also Livingston v. Texas*, No. 22-40719, 2023 WL 4931923 (5th Cir. Aug. 2, 2023) (per curiam) (affirming summary judgment on qualified immunity grounds by relying on police dashcam footage that contradicted plaintiff's claims). "In sum, a court may rely on video evidence to resolve any claimed genuine disputes of material fact and rule on summary judgment." *Hodge*, 90 F.4th at 846. Therefore, when the video "blatantly

contradicts" Sells' version of events, the video will control; when it does not, Sells' version of events will control in addressing Defendants' Motion.

**B.      Sells' Claim of Excessive Force.**

As a pretrial detainee bringing an excessive force claim under Section 1983, Sells must establish "(1) an injury that (2) resulted directly and only from the use of force that was excessive to the need, and (3) the use of force that was objectively unreasonable." *Bush v. Strain*, 513 F.3d 492, 500–01 (5th Cir. 2008); *see also Kingsley*, 576 U.S. at 397 (To prevail on an excessive force claim, a plaintiff must show "that the force purposely or knowingly used against him was objectively unreasonable."). As a pretrial detainee, Sells "can prevail by providing only objective evidence that the challenged governmental action is not rationally related to a legitimate governmental objective or that it is excessive in relation to that purpose." *Id.* at 398. In *Kingsley*, the U.S. Supreme Court identified certain factors to consider in determining the reasonableness of an officer's use of force:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 576 U.S. at 397. "In excessive-force claims, the reasonableness of an officer's conduct depends on the 'facts and circumstances of each particular case . . . .'" *Cooper v. Brown*, 844 F.3d 517, 522 (5th Cir. 2016) (quoting *Graham*, 490 U.S. at 396). Such a determination is based on "the perspective of a reasonable officer on the scene." *Id*. The court must examine "the reasonableness of the force from the perspective of a jailer who is often forced to make split-second decisions in tense situations." *Fairchild v. Coryell Cty.*, 40 F.4th 359, 363 (5th Cir. 2022).

Sells contends that, as a result of the incident, he suffered a contusion on the back of his

head and had a front tooth knocked out or broken. (ECF 3 at 2; ECF 60 at 6).[3] He also claims in the Complaint that he was strangled into unconsciousness. (ECF 3 at 4). Florez claims, however, that Sells was not strangled, nor did he lose a front tooth during the incident. (ECF 55 at 94). As noted above, the video does not show Sells unconscious during the incident, nor does it unequivocally show whether Sells did or did not suffer a lost or cracked tooth. (ECF 56).

Regarding the lost front tooth, there is no blood on Sells' face in the photographs taken immediately after the incident, which might indicate the loss of a tooth during the use of force. (ECF 55 at 29-34). The officers report that they did not notice Sells losing a tooth. (ECF 55 at 94, 98). Sells did not report a missing or cracked tooth during the medical evaluation immediately after the incident, although he claims he reported it to an unnamed guard later that night. (*Id.* at 7; ECF 60 at 12). He further claims that he filled out a medical request at that time, but it was lost. (*Id.*) Defendants contend he first reported the missing tooth approximately 24 days later. (ECF 55 at 7, 79). There is no dispute that Sells lost a tooth; however, there is no evidence corroborating Sells' statement that he lost it during the incident and specifically lost it as a result of Florez's actions, as opposed to any of the other guards participating in the use of force.

The medical reports indicate that any injuries suffered in connection with the use of force were no more than *de minimis*. *See Gobert v. Caldwell*, 463 F.3d 339, 347 n. 24 (5th Cir. 2006) (in reversing summary judgment denying qualified immunity, finding that "[m]edical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's [civil rights] allegations"); *Wilburn v. Shane*, 193 F.3d 517, 1999 WL 706141, at *1 (5th Cir. Aug. 20, 1999) (finding it "implausible that the hospital would not have recorded the severe injuries" that plaintiff

---

[3] Sells alleges in his Complaint that his tooth was knocked out, but alleges in his response to the Motion that his tooth was broken.

alleged in an excessive force case). Sells reported to the medic that he never lost consciousness, according to the medical records. (ECF 55 at 10). Sells did not report to the medic that his front tooth had been knocked out or cracked. (*Id*.). The sole injuries documented by the medical team immediately after the incident were a small contusion on the back of Sells' head, as well as one under his left eye. The reported injuries were photographed. (*Id.* at 10, 29-34). He was given an ice pack and discharged from the medical center. (*Id*. at 10). In short, there is no summary judgment evidence of anything other than *de minimis* injuries suffered by Plaintiff as a result of the use of force. Plaintiff, therefore, has no basis for a Fourteenth Amendment excessive force claim due to the lack of an actionable injury.

Furthermore, consideration of the remaining factors set forth in *Kinglsey* demonstrates that Florez's use of force was objectively reasonable. Even assuming that Sells did not actively resist Florez's attempts to restrain him once Florez entered the cell, the unrebutted summary judgment evidence demonstrates that Florez deployed force in a reasonable manner, as well as tempered in severity for the purpose of gaining Sells' compliance with his direct orders. He struck Sells in the face one time, pushed him to the wall, and aided the other officers in restraining him. The use of force ceased when Sells was restrained. (ECF 56). Indeed, "[t]he Fifth Circuit has consistently found no excessive force where prison officials employ force against inmates refusing to comply with orders." *Schneider v. Kaelin*, No. C. 12-233, 2013 WL 1867611, at *5 (S.D. Tex. Apr. 21, 2013) (citing *Thomas v. Comstock*, 222 F. App'x 439, 442 (5th Cir. 2007) (per curiam)). Officials are justified in using some degree of force in "a good-faith effort to maintain or restore discipline" when a prisoner refuses to cooperate with legitimate directives of an official. *Gonzales v. Rowe*, No. 5:20-CV-052-BQ, 2020 WL 4811005, at *3 (N.D. Tex. July 27, 2020) (finding "some degree of force" by officers was justified when inmate "refus[ed] to comply with the Officers' repeated

orders to lie on the cell's floor" because "[d]isobeying orders poses a threat to the order and security of an institution") (citing *Minix v. Blevins*, No. 6:06cv306, 2007 WL 1217883, at *24 (E.D. Tex. Apr. 23, 2007)); *Rios v. McBain*, No. 504CV84, 2005 WL 1026192, at *7 (E.D. Tex. Apr. 28, 2005) (noting that "open defiance of orders plainly poses a threat to the security of the institution, regardless of whether or not the defiance is emanating from within a locked cell"), *R. & R. adopted by* 2005 WL 1026192 (E.D. Tex. Apr. 28, 2005).

The potential security problem of a maximum-security inmate housed in a cell with seven other maximum-security inmates posed a reasonably perceived threat to the safety of both the officers entering the cell to restrain Sells and the other inmates, who could have either joined Sells in the altercation or been injured by him had he turned his ire towards them. (ECF 55 at 93). The reasonableness of the force must be assessed from the perspective and with the knowledge of the defendant officer and with deference to policies and practices needed to maintain order and institutional security. *See Kingsley*, 576 U.S. 399–400.

Sells contends that he had no intention of fighting Florez and he was attempting to talk to Florez rather that fight him. He also claims that he was following Florez's orders to step back. (ECF 60 at 4). However, based on the minimal amount of retreating by Sells as shown in the video, combined with his other actions described above, it was not unreasonable for Florez to believe that Sells was not complying with his orders. *See White v. Pauly*, 580 U.S. 73, 76-77, (2017) ("Because this case concerns the defense of qualified immunity, however, the Court considers only the facts that were knowable to the defendant officers," *citing Kingsley*, 576 U.S. at 399.).

Accordingly, even when viewing the evidence in a light most favorable to Sells, Sells has not provided summary judgment evidence to create a genuine dispute of any material fact regarding whether Florez is entitled to summary judgment on his qualified immunity defense to

Sells' Fourteenth Amendment claim against him.[4]

**C.    Sells Does Not Overcome the Second Prong of the Qualified Immunity Analysis.**

**1.    <u>No violation of clearly established law</u>.**

Even assuming that Florez's conduct resulted in a violation of Sells' constitutional rights, Florez's conduct was objectively reasonable in light of clearly established law. "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (internal quotation omitted). There are two ways for a plaintiff to demonstrate that a defendant's conduct violated clearly established law. *Batyukova v. Doege,* 994 F.3d 717, 726 (5th Cir. 2021). Under the first, more typical approach, the plaintiff must "identify a case" or "body of relevant case law" in which "an officer acting under similar circumstances ... was held to have violated the [Constitution]." *Id*. While there need not be a case directly on point, the unlawfulness of the challenged conduct must be beyond debate. *Id.* Under the second approach, there can be the rare "obvious case," where the unlawfulness of the officer's conduct is so egregious that it is sufficiently clear although existing precedent does not address similar factual circumstances. *See Doege*, 994 F.3d at 726 (citing *Dist. of Columbia v. Wesby*, 538 U.S. 48, 65 (2018)); *see also Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

"In determining what constitutes clearly established law, [the Fifth Circuit] looks to Supreme Court precedent and then to [its] own." *Hicks v. LeBlanc*, 81 F.4th 497, 503 (5th Cir. 2023), (quoting *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018)). When there is no

---

[4]While Sells lists eight disputed facts in his response brief (ECF 60 at 5), the Court disagrees that such disputes are material for the purposes of this Motion. To the extent that officers' statements may contradict the video or each other, as Sells contends, the video controls and thus such contradictions (if any) are immaterial.

direct controlling authority, "[the Fifth Circuit] may rely on decisions from other circuits to the extent that they constitute a robust consensus of cases of persuasive authority." *Id.* "It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality." *Rich v. Palko*, 920 F.3d 288, 294 (5th Cir. 2019).

This is not the rare "obvious case" in which the unlawfulness of the officer's conduct is so egregious that it is sufficiently clear such actions violate a prisoner's rights. Further, Sells provided no case law in response to the Motion that supports his position. Thus, he failed to meet his burden to show that Florez should have known that his conduct violated clearly established law. Conversely, Defendants point out that other courts have held that similar conduct was not found to be clearly unreasonable, even after the incident herein. In *Jones v. Wright,* No. A-22-CV-1303-RP, 2023 WL 4940517, at *2 (W.D. Tex. Aug. 2, 2023), the Court found an officer entitled to qualified immunity when he "delivered a single personal strike to the left side of Plaintiff's face, causing Plaintiff to fall to the floor" after the plaintiff had yelled, threatened officers and "assumed a bladed position and raised his hands to a boxing position directly in front of [the defendant]." *Id.* at *2. In determining that the defendant was entitled to qualified immunity, the Court held that:

> The Court need not determine whether Plaintiff suffered an injury that was more than *de minimis* or the officer's use of force to gain control over an unruly detainee was objectively unreasonable. That is so because Plaintiff points to no authority to demonstrate that the right at issue was clearly established at the time of Officer Wright's alleged misconduct. In *Narro v. Edwards*, 829 F. App'x 7, 13 (5th Cir. 2020), the court determined there was no settled authority to put a jailer on notice that a non-deadly punch to gain control of a resisting inmate and prevent the jailer's own assault would violate the inmate's rights.

*Jones*, 2023 WL at *4. The conduct complained of in *Jones* occurred on July 26, 2022; the conduct complained of herein occurred on December 24, 2019. Therefore, if the issue was not clearly established in 2022, it certainly was not clearly established in 2019.

**2.    <u>Florez's conduct was objectively reasonable</u>.**

"Even if the government official's conduct violates a clearly established right, the official is nonetheless entitled to qualified immunity if his conduct was objectively reasonable." *Wallace v. County of Comal*, 400 F.3d 284, 289 (5th Cir. 2005) (internal marks omitted). "The defendant's acts are held to be objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's asserted constitutional or federal statutory right." *Cozzo v. Tangipahoa Parish Council—President Gov't*, 279 F.3d 273, 284 (5th Cir. 2002); *see also Stanton v. Sims*, 571 U.S. 3, 6 (2013) (government officials are given "breathing room to make reasonable but mistaken judgments"). Thus, denial of an official's motion for summary judgment predicated upon qualified immunity requires two distinct determinations: (1) "a certain course of conduct would, as a matter of law, be objectively unreasonable in light of clearly established law"; and (2) "a genuine issue of fact exists regarding whether the defendant(s) did, in fact, engage in such conduct." *Hogan v. Cunningham*, 722 F.3d 725, 730 (5th Cir. 2013).

The risk an individual poses to officers is part of the objective-reasonableness analysis, which is a question of law. *Argueta*, 86 F.4th at 1092. "The question for this court is whether [the police officer] could reasonably believe that [the suspect] posed a serious threat of harm." *Harmon v. City of Arlington*, 16 F.4th 1159, 1163 (5th Cir. 2021); *see also Roque v. Harvel*, 993 F.3d 325, 333 (5th Cir. 2021) (whether an officer acted in an objectively reasonable way is a legal question for the court that asks whether "the suspect poses a threat of serious physical harm, either to the officer or to others"); *Romero v. City of Grapevine*, 888 F.3d 170, 176–77 (5th Cir. 2018) (same) (collecting cases).

The undisputed summary judgment evidence shows that Florez's conduct was objectively reasonable. Sells, a maximum-security prisoner housed with seven other maximum-security prisoners, was displaying belligerent conduct, as set forth above. (ECF 55 at 92-93; ECF 56). Florez feared that such conduct could either incite the other prisoners to violence, or subject them to injury. (ECF 55 at 93). Although Sells moved back minimally when ordered to do so, he did not obey orders to put his hands on the wall, nor did he change his aggressive stance. (ECF 55 at 10; ECF 56). When Florez entered the cell, he placed his hand on Sells' chest and "felt him tense up," which led Florez to believe that Sells was about to attack him. (ECF 55 at 93). While Florez took the lead in pushing Sells to the wall, he let other officers subdue and restrain him. (ECF 55 at 93-4; ECF 56). Conversely, Sells provides no evidence that Florez's conduct was unreasonable under the circumstances. In fact, Sells apologized to Florez for the incident, blaming his high blood pressure for causing his behavior. (ECF 55 at 95). Therefore, Sells has provided no evidence creating a disputed material fact that Florez's actions were not objectively reasonable.

## D.    Florez is Entitled to Qualified Immunity.

For the reasons stated above, Sells failed to provide sufficient evidence to create a fact issue as to Florez's entitlement to qualified immunity. Specifically, Sells failed to create a material fact issue as to whether Florez's conduct, as shown in the video and as alleged by Sells, violated Sells' constitutional rights. Further, Sells failed to create a material fact issue as to whether Florez's conduct violated Sells' clearly established rights, and that his conduct was not objectively reasonable. Florez's motion for summary judgment on qualified immunity should be granted.

## IV. CLAIMS AGAINST DEFENDANT BIRKENFELD

## A.    Bystander Liability Claim.

Sells alleges that Birkenfeld failed to protect him from Florez's use of excessive force and

that Birkenfeld authorized the use of force. (ECF 3 at 3). The theory of bystander liability applies to Section 1983 claims for use of excessive force against a pretrial detainee. *See, e.g., Kitchen v. Dallas Cnty., Tex.*, 759 F.3d 468, 480 (5th Cir. 2014). To prevail on a theory of bystander liability, Sells must show that Birkenfeld "(1) knew a fellow officer was violating an individual's constitutional rights, (2) was present at the scene of the constitutional violation, (3) had a reasonable opportunity to prevent the harm but, nevertheless, (4) chose not to act." *Joseph on behalf of Estate of Joseph v. Bartlett*, 981 F.3d 319, 343 (5th Cir. 2020).

Birkenfeld provides evidence that he arrived at the scene after Florez's use of force had ended and as Sells was being escorted to the medical center by other officers. (ECF 55 at 98). Sells provided no evidence disputing Birkenfeld's statement. Because Sells provided no evidence that a material fact exists as to whether Birkenfeld (1) was a bystander or (2) had authorized the use of force, he has not created a material fact issue as to whether Birkenfeld's conduct violated Sells' constitutional rights. Further, an officer will not be liable on a bystander-liability claim if the plaintiff cannot prove an underlying constitutional violation. *See Reynolds v. Wood Cnty., Tex.*, No. 22-40381, 2023 WL 3175467, at *4 (5th Cir. May 1, 2023).

## B.    Excessive Force Claim.

Sells next claims that Birkenfeld used excessive force when moving him into a cell by using a taser. (ECF 3 at 3). As stated above, to prevail on his excessive force claim, Sells must show (1) injury, (2) resulting directly from a use of force that was clearly excessive, and (3) the excessiveness of which was clearly unreasonable. *See Cooper*, 844 F.3d at 522; *Collier v. Montgomery*, 569 F.3d 214, 218 (5th Cir. 2009). However, in his response to the Motion, Sells does not dispute Birkenfeld's assertion that Birkenfeld never deployed the taser. (ECF 60). Birkenfeld states that he simply held the taser to Sells' shoulder blade to induce compliance, and

16

only after Sells refused two orders to enter the cell. (ECF 55 at 99). Sells has provided no evidence of injury caused by Birkenfeld. Further, Sells has provided no evidence that Birkenfeld's conduct constituted "clearly excessive" force, or that any force used by Birkenfeld was clearly unreasonable.

## C.    Deliberate Indifference Claim.

Sells next alleges that Birkenfeld violated his constitutional rights when he placed Sells in an unsanitary cell for eight days. Conversely, Defendants claim that the cell was clean when Sells was placed there. In support of the Motion, Defendants provide photos of an apparently clean cell, but Sells alleges that the photos do not show the parts of the cell that were contaminated with feces. (ECF 60 at p. 12). Sells claims that feces had been smeared near the large observation window, as well as on the feeding slot, the "little window," the bedside table and the wall by the bed. (*Id*. at 12-13). For the purposes of this Motion, the Court will assume that Sells' version of the facts is correct and that he was housed for eight days in a cell with feces on the windows, feeding slot, bedside table and wall by the bed, but not to such an extent that it was visible in the photos provided by Defendants. Sells also admits that he does not assert that the cell was "covered" in feces. (ECF 60 at 12).

A pretrial detainee's constitutional rights "flow from both the procedural and substantive due process guarantees of the Fourteenth Amendment." *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir. 1996) (en banc) (citing *Bell v. Wolfish*, 441 U.S. 520 (1979)). "Since the State does punish convicted prisoners, but cannot punish pretrial detainees, a pretrial detainee's due process rights are said to be 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Id.* (emphasis omitted) (quoting *City of Revere v. Mass. Gen. Hosp*., 463 U.S. 239, 244 (1983)). In the Fifth Circuit, pretrial detainees may bring Section 1983 claims under two theories:

"condition of confinement" or "episodic act or omission." *Est. of Henson v. Wichita Cnty.*, 795 F.3d 456, 463 (5th Cir. 2015). Episodic acts or omissions occur when the harm is a particular act or omission of one or more officials. *Hare*, 74 F.3d at 645. Here, Sells is making a claim using the episodic act or omission theory.

A pre-trial detainee alleging episodic acts or omissions under the Fourteenth Amendment must satisfy both objective and subjective components of that claim; the same tests as a convicted inmate alleging an Eighth Amendment violation. *Hare*, 74 F.3d at 643. For the objective component, prisoners must show that they are "incarcerated under conditions posing a substantial risk of serious harm" or that they have been deprived of "the minimal civilized measure of life's necessities" as a result of the defendant's actions. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For the subjective component, the prison official must have acted with a sufficiently culpable state of mind. *Id.* A prison official's culpable state of mind is one of deliberate indifference, which is defined as knowingly disregarding an excessive risk to inmate health or safety. "A prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety…." *Id.* An official may be held liable for episodic acts or omissions only if the plaintiff shows that the official had actual subjective knowledge of a substantial risk of harm to the detainee, but responded with deliberate indifference to that risk. *Hare*, 74 F.3d at 650; *Payne v. Collins*, 986 F. Supp. 1036, 1952 (E.D. Tex. 1997). To prove his rights were violated by an individual or episodic act, a pre-trial detainee "must establish that an official acted with subjective deliberate indifference." *Scott*, 114 F.3d at 54 (quoting *Hare*, 74 F.3d at 649 n.4).

Sells was housed in a cell for eight days that, according to Sells, had feces smeared in various locations throughout the cell. Assuming the truth of Sells' allegation, this appears to be a

"short term sanitation problem" that does not amount to a constitutional violation. *See Unger v. Taylor*, No. 6:06-CV-466, 2007 WL 9711406, at \*12 (E.D. Tex. Sept. 18, 2007), *R. & R. adopted by* 2008 WL 11422152 (E.D. Tex. Feb. 1, 2008), *aff'd* 368 F. App'x 526 (5th Cir. 2010). It certainly does not rise to the level of "substantial risk of harm" to Sells such that Sells created a fact question sufficient to defeat qualified immunity. First, Sells does not demonstrate that his confinement in the cell for eight days constitutes "punishment," *i.e.*, that such confinement violated his constitutional rights. *See Geagan v. Couvillon*, No. 6:18-CV-00078; 2018 WL 1750954, at \*4 (W.D. La. March 22, 2018) (holding that pre-trial detainee's complaint of "two incidents in which the toilet in his dorm overflowed, causing 'feces, urine, and other foreign objects' to flood the area ... while unpleasant, concern nothing more than *de minimis* inconveniences which do not constitute 'punishment' or otherwise rise to the level of constitutional violations"); *Smith v. Copeland*, 87 F.3d 265, 268 (8th Cir. 1996) (finding no constitutional violation where pre-trial detainee had to "endure the stench of his own feces and urine" for four days due to an overflowed toilet in his cell); *Desroche v. Strain*, 507 F. Supp. 2d 571, 581 (E.D. La. 2007) (pre-trial detainee's short-term sanitation restriction, "although admittedly unpleasant, does not amount to a constitutional violation"); *Unger*, 2007 WL at \*12 (noting that "a short term sanitation problem does not amount to a constitutional violation"); *Johnson v. Anderson*, 255 Fed. App'x 851, 854 (5th Cir. 2007) (holding a brief delay of "three or four days" of unsanitary conditions in holding cell before it was cleaned by staff does not demonstrate deliberate indifference to needs).

Even assuming that the objective prong had been met, however, Sells also fails to controvert the subjective standard, in that there is no evidence that Birkenfeld acted with deliberate indifference. Sells provided no evidence that, assuming Birkenfeld knew of the feces on the wall, he knew that the feces constituted a substantial risk of serious harm to Sells' health or safety. Nor

is there evidence that Birkenfeld actually drew the inference that "such potential for harm existed" or that he deliberately disregarded such harm. Conversely, Birkenfeld provides evidence that he was not aware of feces on the walls of the cell and he believed the cell to be clean. (ECF 55 at 99). Such evidence was not controverted by Sells. Sells also provides no evidence that he notified Birkenfeld of the feces, or that Birkenfeld deliberately disregarded such notice. (ECF 60). A prison official acts with deliberate indifference "only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847-48 (1994).

Even if Sells had notified Birkenfeld of the feces at the time he was placed in the cell, Sells fails to provide evidence that the feces, although unpleasant, created a substantial risk of serious harm that Birkenfeld failed to abate. (ECF 60). In sum, Sells has failed to provide evidence of deliberate indifference, and thus has failed to provide evidence controverting Birkenfeld's entitlement to qualified immunity. *See Johnson v. Anderson*, 255 F. App'x 851, 853 (5th Cir. 2007).

**D.      Sells Did Not Show Birkenfeld Violated Clearly Established Law.**

Under the standard set forth above regarding the second prong of the qualified immunity analysis, Sells did not show that Birkenfeld's conduct violated clearly established law. He provided no case law in his response to the Motion that supports his position; therefore, he failed to meet his burden to show that Birkenfeld should have known that his conduct violated clearly established law. *See Weisshaus v. Tiechelman*, No. 22-01199, 2024 WL 620372 (5th Cir. Feb. 14, 2024) (The plaintiff must "identify a case in which an officer acting under similar circumstances was held to have committed a constitutional violation and explain why the case clearly proscribed the conduct of the officer") (quoting *Estate of Joseph*, 981 F.3d at 345).

20

**E.    Birkenfeld is Entitled to Qualified Immunity.**

For the reasons stated above, Sells failed to provide sufficient evidence to create a fact issue as to Birkenfeld's entitlement to qualified immunity. Specifically, Sells failed to create a material fact issue as to whether Birkenfeld's conduct, as alleged by Sells, violated Sells' constitutional rights. Further, Sells failed to create a material fact issue as to whether Birkenfeld's conduct violated Sells' clearly established rights, and that his conduct was not objectively reasonable. Birkenfeld's motion for summary judgment on qualified immunity should be granted.

RECOMMENDATION

For the reasons set forth above, the U.S. Magistrate Judge recommends that Defendants' Motion For Summary Judgment be GRANTED.

INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Findings, Conclusions and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED March 21, 2024.



_____
LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE



**\* NOTICE OF RIGHT TO OBJECT \***

Any party may object to these proposed findings, conclusions and recommendation. In the event parties wish to object, they are hereby NOTIFIED that the deadline for filing objections is fourteen (14) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(C), or transmission by

21

electronic means, Fed. R. Civ. P. 5(b)(2)(E). Any objections must be filed on or before the fourteenth (14th) day after this recommendation is filed as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(d).

Any such objections shall be made in a written pleading entitled "Objections to the Findings, Conclusions and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge and accepted by the district court. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1), *as recognized in ACS Recovery Servs., Inc. v. Griffin*, 676 F.3d 512, 521 n.5 (5th Cir. 2012); *Rodriguez v. Bowen,* 857 F.2d 275, 276–77 (5th Cir. 1988).